SCHOTT, Judge.
Plaintiff filed this workmen’s compensation claim seeking benefits for total disability commencing on the date of the accident on September 2, 1977. The trial court awarded her benefits up to July 19, 1978, and she has appealed, seeking an extension of benefits to July 19, 1979, and expenses she incurred for treatments administered by a chiropractor beginning on July 21, 1978.
In this court plaintiff has specified as the only error the refusal of the trial court to permit the chiropractor to testify that the cause of plaintiff’s condition as he found it was the accident in September, 1977. However, we consider the real issue to be whether the trial judge erred in his apparent rejection of the chiropractor’s testimony irrespective of the limited effect of his ruling that the chiropractor’s testimony as to causation was inadmissible.
Plaintiff was employed as a waitress or server in a cafeteria at the time of her accident which occurred when she slipped and fell causing an immediate onset of pain in her neck and back. A few days after the accident she went to a chiropractor, L. J. Bourgeois, Jr., but he did not treat her. On September 15 she went to the emergency room of Ochsner Clinic reporting a history of the accident and complaining of neck and back pain which persisted while she continued to work. The initial diagnosis was mild *760 cervical and lumbar strain with recommendation of bed rest for one week, heat applications, medication, and return to the orthopedic clinic if the problem persisted. On September 26 she did return and was examined by Dr. A. W. Dunn, an orthopedist, who found no objective symptoms, no abnormalities in the X-ray photographs taken on the occasion of her visit to the emergency room, no cause for her complaints and no reason why she should not return to work.
On September 30 plaintiff was seen by Dr. Julius L. Levy, a general surgeon, on referral by her attorney. She was complaining of cervical and lumbosacral pain. He found spasm in both areas and diagnosed soft tissue injuries for which he prescribed a course of diathermy treatments. These were administered from October 4, 1977, until January 4, 1978, at intervals of every few days. Spasm was found in the neck until December 22 and in the back until she was discharged. Dr. Levy felt that she should return to her pre-injury state within two or four weeks thereafter.
On February 1, .1978, plaintiff was seen by Dr. Jack Wickstrom, an orthopedist, again on referral by her attorney. She still complained of pain in her neck and back. He found muscle spasm on the right side of her neck but none in the back, explaining that her obesity prevented him from determining whether there was any spasm there or not. He administered a straight leg raising test which produced an objective finding to support her claim of pain in her leg radiating from the back. He recommended that she lose a hundred pounds of weight as a cure for the chronic symptoms about which she complained. In his opinion, there was no evidence of marked physical disability to match-her subjective complaints. He felt that as of February had she been put on a rehabilitation program, lost weight and got her muscles back in shape she could have gone back to work shortly thereafter. He again saw plaintiff on May 1, June 1, and July 19. On May 1 she was still complaining of pain and seemed to have tenderness in the lumbar region of her spine, prompting Dr. Wickstrom to start her on medication. She told him her neck felt better at that point. By June 1 she had the same complaints. On neither one of these visits was he able to palpate any muscle spasm but he explained that the.fat prevented a manifestation of spasm even if it had been present. Finally, he last saw her on July 19 when she was still complaining of back pain but she had a full range of motion with complaints at extremes of motion in her back. He did not feel any spasm. Based on his last examination of plaintiff on July 19 it was his opinion that if she would lose weight and undertake the exercise program he had discussed previously she would be able to return to work. Conversely, without losing the weight or undertaking the program he doubted that she could return to work. He classified her condition as a moderate myositis inflammation of the muscles.
On July 21, 1978, plaintiff was examined by Henry J. Fitch, a chiropractor. He testified as follows: She was in pain and apparent distress when she entered his office and had a slight limp. There was muscle spasm on the right side of her neck and she had a left shoulder tilt, left hip lower than the right, and a right short leg. On the basis of his examination and X-ray photographs which he took he diagnosed a chronical cervical thoracic subluxation, chronic sacroiliac and lumbar strain with radiculitis of the right leg. He defined the subluxation as a condition in the vertebra whereby it has lost its normal position in relationship to the one above and below, and radiculitis as a radiating type pain along the course of the nerve. He put her on a course of treatment twice a week consisting of “chiropractic adjustments” and therapy consisting of “pulse galvanism” which he defined as electrical current for pain. He also prescribed vitamins. His treatments were helping plaintiff and she could probably return to work around July 19, 1979, (four months after the trial).
All of this testimony by Dr. Fitch was received in evidence by the trial court over defendants’ objections; his opinion that plaintiff’s condition was caused by the accident was excluded but is in the record un *761 der a proffer. The theory of plaintiff in this court is that the trial judge’s refusal to permit the chiropractor to testify that plaintiff’s condition as he found and treated it was caused by the accident was reversible error.
For plaintiff’s theory to be valid we must assume that the trial judge believed the chiropractor and gave weight to his testimony and then declined to connect her condition to the accident. But this would make no sense because if she was still disabled when she last saw Dr. Wickstrom and first saw Dr. Fitch her accident was necessarily the cause of her continuing problems. From our review of the record, it appears that the trial judge, who gave no reasons for his judgment, rejected all of Fitch’s testimony because of the many substantial inconsistencies between his supposed findings on July 21 and those of the orthopedist, Dr. Wickstrom, just two days before, as well as the findings of the other medical doctors who testified.
Dr. Fitch found abnormalities in the X-rays whereas the medical doctors found none in the ones they reviewed. Dr. Fitch admitted that a subluxation revealed by a later X-ray and not on the previous X-rays might indicate some intervening cause for the subluxation. Curiously, Fitch testified that his X-rays showed spasm in the lower back and said that he noted this spasm when the X-rays were being taken. Dr. Wickstrom emphatically testified he could never palpate spasm in plaintiff’s lower back because of her obesity. Fitch was not concerned about plaintiff’s weight problem initially whereas Wickstrom was preoccupied with this problem each time he saw plaintiff. According to Wickstrom, the only time he had ever palpated muscle spasm in the plaintiff was on the right side of her neck in February but when he saw her in May she said her neck felt better. Yet, Fitch diagnosed a cervical strain. Wickstrom’s testimony that he was unable to palpate any muscle spasm in the plaintiff on July 19 stood in sharp contrast with Fitch’s testimony that he found spasm in plaintiff just two days later. Fitch testified that plaintiff had a limp, but Wick-strom said she did not limp but simply had the abnormal gait of an obese person.
It was plaintiff’s burden to prove her case. She rested her case for disability beyond July 19, 1978, on the testimony of Dr. Fitch and the trial judge apparently disbelieved that testimony. In this court it is plaintiff’s burden to show that this action on the part of the trial court was manifestly erroneous and because we are unable to reach this conclusion we affirm the judgment.
AFFIRMED.